IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**G&N ENTERPRISE, LLC**, **et al.**,

        *Plaintiffs*,

v.                                                                                      CAUSE NO. 3:21-CV-485-CWR-LGI

**AEGLE NUTRITION, LLC**,

        *Defendant*.

## ORDER

Before the Court are cross-motions for summary judgment. Docket Nos. 46 and 51. On review, the defendant's motion for summary judgment will be granted.

**I.   Facts**

Plaintiff G&N Enterprise, LLC owns the intellectual property to a hand sanitizer formula it calls SafMaxx. Plaintiff SanInno, LLC is a sales and marketing company in the public health industry.

When the COVID-19 pandemic hit, G&N and SanInno launched a joint venture to capitalize upon the demand for hand sanitizer. They hired a company called Enviro-Tech to "blend" SafMaxx. The plaintiffs then hired Defendant Aegle Nutrition, LLC to bottle and label SafMaxx.

In this case, the plaintiffs allege that Aegle breached the contract by introducing a contaminant into SafMaxx during the bottling process, rendering it unsalable. They further allege that Aegle knew of the contamination at the time yet continued to bottle SafMaxx. The

plaintiffs seek monetary damages consisting of $275,918 in direct losses and $1.431 million in lost sales.

## II.   Discussion

The familiar summary judgment standard applies, so the Court will proceed to discuss the state of the evidence.

The primary piece of evidence in this suit is a one-page invoice, dated August 10, 2020, in which Aegle invoiced G&N for bottling 190,000 units of SafMaxx. Docket No. 51-1 at 6. The invoice shows that G&N paid Aegle $98,700 and had a "Balance Due" of $2,500. *Id.* An affidavit by G&N's manager confirms that this was the "contract." Docket No. 58-2 at 1.

Emails reflect that Aegle delivered 14 pallets of SafMaxx on August 25 and another 12 pallets on September 10. Docket No. 56-1 at 41. A third delivery was apparently made in early October. It was not until October 15, 2020, however, that G&N emailed Aegle that it discovered "some mucus/slime like stuff and the [SafMaxx] is cloudy." *Id.* Additional correspondence shows that the parties were unable to agree about the cause of the contamination. *E.g.*, *id.* at 70. That dispute has persisted through this litigation.

The central problem with the plaintiffs' case is this: even now, after the close of discovery, the plaintiffs cannot point to any admissible evidence showing that Aegle was responsible for the contamination.

The closest they come is in the affidavit of G&N's manager Gary Beck. Beck states that Enviro-Tech "confirmed to us [G&N] that the fully-blended product was uncontaminated at the time of delivery." Docket No. 58-2 at 1. But that is classic hearsay. G&N has nothing else—no factual or expert testimony—to substantiate its claim that Aegle introduced the contaminant that caused the "mucus/slime-like stuff." For all we know, the contaminant was

present but unobservable at the time of blending at Enviro-Tech and required weeks of fermentation for it to become apparent to the eye.

As this case is proceeding in diversity, Mississippi law applies. Mississippi law provides the following:

> Ordinarily, no recovery can be had where resort must be had to speculation or conjecture for the purpose of determining whether or not the damages resulted from the act of which complaint is made, or some other cause, or where it is impossible to say what of any portion of the damages resulted from the fault of the defendant and what portion from the fault of the plaintiff himself.

*Hudson v. Farrish Gravel Co.*, 279 So. 2d 630, 636 (Miss. 1973) (citations omitted).

That is the case here. The plaintiffs have not established a factual dispute on whether their damages, if any, resulted from the fault of Aegle rather than another party. As a result, none of the plaintiffs' contract-based theories of recovery can proceed.

To this, the plaintiffs might press that they have submitted evidence that Aegle's hair-net filtering left "little fibers . . . in our product." Docket No. 58-2 at 3. That is indeed competent summary judgment evidence. There is just no causal relationship between Aegle's fibers and the plaintiffs' damages: SafMaxx was rendered unsalable by "some mucus/slime like stuff," not fibers. Put differently, even assuming this filtering process breached Aegle's contractual duties, there's no evidence that it harmed the plaintiffs.

The plaintiffs' evidentiary submissions hint at other breach of contract possibilities, namely, that Aegle bottled SafMaxx too late, *see id.* at 2, and that Aegle is liable for labeling errors on 0.2% of the finished bottles, *see* Docket No. 56-1 at 70. But the plaintiffs' brief in opposition to summary judgment does not advance either scenario as a basis for trial; rather, it focuses exclusively upon contamination. *See* Docket No. 59. Even if the Court considered these other possibilities, moreover, it would not find a factual dispute suitable for trial. The

single-page contract mentions nothing about the timing of delivery, and the plaintiffs' loss of 0.2% of their product is entirely offset by their "Balance Due" of $2,500.[1]

### III. Conclusion

For these reasons, the defendant's motion for summary judgment is granted. The cross-motion is necessarily denied. A separate Final Judgment shall issue this day.

**SO ORDERED**, this the 18th day of April, 2023.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[1] "The duty of good faith and fair dealing arises from the existence of a contract between parties." *Am. Banker's Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196, 1207 (Miss. 2001). "A party has not breached the implied covenant of good faith and fair dealing when the party only took actions duly authorized by contract." *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 745 (Miss. 2019). Aegle is entitled to summary judgment on the plaintiffs' breach of good faith and fair dealing claim.